Stanard, J.
It is known to the court, as^ well as the bar, that whatever equality of importance there may be in the questions presented by the demurrers to the respective counts, judging from the face of the record, the ultimate fate of the claim asserted by the plaintiffs in error, so far as it can be affected by the questions of law arising on the pleadings, depends mainly, if not entirely, on the decision of the questions presented by the demurrer to the 5th and 6th counts. If the demurrer to those counts should be sustained, though one or more of the demurrers to the other counts should be overruled, the principles on which they would be sustained, applied to the actual evidence that can probably be adduced, on the other counts, would forbid a recovery on them. And, if they be overruled, all the evidence that by any probability can be adduced in support of the other counts and sufficient to sustain them, would equally, if not a fortiori, sustain the 5th and 6th counts.
So regarding the questions presented by the demurrers to the 5th and 6th counts, my attention has been almost entirely directed to them, and as the solution of them will substantially settle the questions of law on which the fate of this case really hangs, I have bestowed *543 on them the anxious and earnest consideration demanded by the magnitude of the claim, the multiform and wide spread interests it affects, and the solemn and, I may add, painful responsibility, that attaches to the adjudication that may fix the fate of such a claim.
I should feel still more intensely that responsibility, if the opinion that I now give essentially affected the judgment that will he pronounced in this case. Whether I concur with or dissent from the opinion of my brethren, concurring with the judge of the superior court in thinking that the demurrers should be sustained, the judgment of the court below in that regard, would be affirmed.
As we are all of opinion that the 7th and 8th counts shew a good cause of action, and that the judgment of the court below sustaining the demurrers to these counts is erroneous, I shall assume that opinion to be correct, in considering the question on the 5th and 6lh counts; and whether or no there should he a different judgment rendered as to these last, depends on the difference that may be shewn to exist between them, by a careful comparison.
The 5th and 6th counts sot out the purpose of the defendants, to be carried into effect in futuro, of' giving credit to such bills, notes and drafts that Steenbergen should draw for the purpose of procuring them to be discounted by plaintiffs. To give effect to that purpose, the defendants did appoint Taylor their attorney, for them and in their names to sign their names upon such hills, notes and drafts, and that thereupon the bill in question being made by Steenbergen with intent that it should he endorsed by the defendants, and discounted by the plaintiffs, the defendants with like intent did, by their said attorney, acting in pursuance of the authority conferred as aforesaid, endorse the bill in question, and ordered and appointed the sum therein mentioned to be paid to the plaintiffs. And they then and there delivered *544 the said bill so endorsed to the plaintiffs, and it was afterwards discounted by plaintiffs for iSteenbergen. The 7th and 8th counts state in substance that the bill being made by iSteenbergen with intent that it should be endorsed by the defendants, and so endorsed should be discounted by the plaintiffs, the defendants with like intent that the bill should be discounted by the plaintiffs, by their attorney duly authorized in that behalf, jointly endorsed the bill, by which they ordered and appointed the contents thereof to be paid to the plaintiffs, and they then and there delivered it to the plaintiffs, who afterwards discounted it for Steenbergen, and he had the use of the proceeds. These counts represent the bill as actually existing at the time the defendants signified their consent and made their actual endorsement by,án agent with plenary authority, and the endorsement so charged was to all intents and purposes, as-binding on the defendants as if the endorsement had been made by the defendants in person. Such is our construction of the counts, and in coming to the conclusion that those counts are good, we have regarded the allegation as equivalent to the allegation that the defendants in person made the endorsement. The principle on which that opinion rests, would necessarily conduct us to the conclusion, that if the endorsements alleged in the 5th and 6th counts were made by the defendants in person, the judgment sustaining the demurrers would be erroneous. This reduces the question to this, does the endorsement as charged in the 5th and 6th counts, as made by the attorney, and deriving its obligatory force solely from the authority as specially set forth in those counts, bind the parties as it would if made by them in person ?
My impression i's, that an act done under a special authority does not necessarily involve the same responsibility as the like act done by the constituent in person. The authority looks and has relation only to future acts; *545 that done in person is in presentí. The subject to A -i . . . which the former is to be applied, is limited to the strict definition of the power. The latter is applied to an existing subject, and no question of the intention or authority to apply it can arise. The act of the attorney binds only when it strictly conforms to the power; that of the parties binds under whatever name made, or however described, if supported by adequate consideration. Endorsement and endorsers may have a popular or a technical sense. Sometimes they are merely descriptive of an act of writing. Sometimes they are used not only as descriptive of the act, but as concluding and significant of a particular and well defined responsibility under the law merchant. When parties put their names on a bill or note, it may be under circumstances which forbid us to predicate of the act, an endorsement in the enlarged mercantile sense, and yet this may bind them as guarantors of others, even though the act is described by them as an endorsement; and though they denominate the act an endorsement, and call themselves endorsers, yet when done by them in person on adequate consideration, they shall be bound as they may be, limiting the meaning of the words endorsement or endorser to their descriptive sense, and charging the party by force of the consideration and the contract that may be specially stated, and using the endorsement as evidence of his accession to it.
The question then is, in what way does the special authority authorize the attorney to bind the constituents by writing their names on the bill as endorsers ? Is it, by so writing them as to satisfy the mere descriptive sense of that word, leaving the fact so done to operate as it may, to charge the defendants, though not on the strict mercantile contract of endorsement ? I think not. The authority is to be applied to papers, the names of which indicate commercial securities, and they are to be used by being discounted by a corporation that we may *546 justly infer discount only such securities. An endorser of such a security, in its strict mercantile sense, is one who by the act of endorsement generally is placed in that relation to the bill, that certain responsibilities attach to him in favour of any subsequent holder, and when these are incurred and discharged, certain rights result to him against the previous parties to the bill. Such an endorser would, on taking up the bill on its dishonour in the hands of an endorsee, have his remedies on the bill against the prior parties thereto ; and no one who is not so an endorser as that such remedy would result and could be used by him on the bill in the condition it was when endorsed by him, is in the exact and complete mercantile sense, an endorser. Í think the view taken by my brother Scott, ascertains that if the defendants as joint endorsers take up the bill described in the 5th and 6th counts on its dishonour, they could not, as the bill stands, and as the result of the condition of endorsers as described, have a remedy on the bill against the acceptor. The only way in which such action could be supported in their names against the acceptor, would be by claiming as endorsees of Beirne, representing him as the endorser to himself and the eight others, and this would be an endorsement, certainly not warranted by a power limited to the making a joint endorsement for all. The question is, must the endorsement to be within the warrant of the power be such as to place the endorsers in the condition, that, while they are subjected to the responsibilities, they will have all the rights that endorsers in the exact and complete mercantile sense would have. In respect to the bill in question, an argument of great force, and which has caused me much hesitation in coming to a conclusion, is derived from the words of the power, which authorizes the joint endorsement for the constituents of any bill, note or draft (without exception or qualification) that Steenbergen might offer for discount; and as this gene *547 ral description embraced such a bill as that described, and as the difficulty of the defendants’ endorsing such a bill jointly, fulfilling the definition of strict technical endorsers, and having all the rights of such endorsers, springs not from the defect of the execution, but is intrinsic, and is the inevitable result, from the nature of the bill endorsed; the failure of the endorsement of it to invest the endorser with those rights, does not invalidate the endorsement. The only answer that occurs to me to this argument is, that the joint endorsement of such a bill was not in contemplation of the constituents of the power, as, Í think, in all probability the bank, when it discounted it, did not regard the endorsement as made, a joint one, but discounted it under the impression that it was in fact a several and successive one, and that general words of the power in stating without exception that it was to be exercised by writing the names of the constituents as endorsers on any bill, note or draft, may be restrained to such bills, on the endorsement of which the endorsers would, with the responsibilities as such, have all the rights of endorsers, according to the exact and complete mercantile sense. I give this answer, though not fully satisfied of its sufficiency.
Finally, is the power to receive the strict construction, which exacts as a condition of its due execution, that the names of parties (whose names shall by virtue of it be signed as endorsers on the bill, note or draft,) shall be so endorsed that while it subjects them to the liabilities of endorsers, they shall have all the rights which endorsers in the full and exact mercantile meaning of the word endorser, when that word is used not only as descriptive of an act, but as importing the responsibilities and rights that arise out of it in respect to the parties, who can be strictly so named as connected with or parties to the paper of which the endorsement is predicated ? This question I answer, though not without hesitation, in the affirmative. The rule is, that the *548 power shall be confined to the limits that a strict construction will assign to it, and that rule applied to the power in question, indicates the answer I give. The result is, that the special authority set out in the and 6th counts, did not authorize the endorsement by the attorney of the names of his constituents as endorsers on the bill described in those counts, so as to bind them to the responsibility of endorsers of that bill, and that the judgment sustaining the demurrers to those counts, ought to be affirmed.
The whole court concurred in sustaining the demurrers to all the counts but the 7th and 8th, and in overruling the demurrers to these counts. Judgment reversed, and cause remanded.